UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEBORAH MULANGU
21790 Ladyslipper Square
Ashburn VA 20147

and

NYANKOYE DRAMOU
4647 Baltimore Avenue
Hyattsville MD 20802

and

CATHOLIC CHARITIES
924 G Street NW
Washington, DC 20001

  Plaintiffs

v.                                                      Civil Action No. 19-cv-

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY
245 Murray Drive SW
Washington DC 20530

Defendant

## COMPLAINT: FOIA CLASS ACTION

### INTRODUCTION

1. This is a class action for violations of the Freedom of Information Act ["FOIA"].

2. This case is related to *Gatore v. DHS,* 15-cv-459 [RBW].

3. Each plaintiff seeks the reasonably segregable portions of a document held by defendant DHS. This document is the final decision of DHS concerning the asylum application of each plaintiff. This document is what is given to immigration judges and federal appellate judges when DHS wants to deport the applicant. This document is the asylum office "assessment."

BACKGROUND

4. The DHS has several components; one of them is the "UC-CIS." Inside the US-CIS is the Asylum Division. Inside the Asylum Division are asylum offices. For example, there is a Los Angeles asylum office and there is an Arlington Virginia asylum office. Inside each asylum office are Supervisory Asylum Officers ["SAOs"], and asylum officers. The asylum applicant files his asylum application with DHS, and then is given an interview at an asylum office, by an asylum officer. After the interview, the officer writes an assessment, and gives it to his SAO.

5. There is 100% supervisory review.

6. The SAO makes the asylum officer write and re-write the assessment, until it is complete. When it is complete, the SAO initials it, and returns it to the officer.

7. The initialed assessment is the final decision of the asylum office, and of US-CIS, and of DHS.

8. No other person is involved with this document, other than the officer and the SAO.

9. When the asylum officer receives the initialed assessment, he becomes a secretary: he checks boxes on a computer, and the computer creates documents. These documents do not contain any new information or analysis; they contain only boilerplate.

10. Inside each asylum office, is an asylum officer, and also a SAO, who initials assessments. Some courts use the phrase "asylum *officer* assessments." It is more accurate to say that there are "asylum *office* assessments." In this complaint, the word "assessment," means the initialed document that is the final decision of the office.

11. Each assessment begins with a simple recitation of facts.

12. Some assessments contain citations to sources that are not available to asylum applicants.

13. Assessments are uniform. The first several paragraphs of each are a simple recitation of the facts.

14. The FOIA requires each agency to disclose the reasonably segregable portions of any document.

15. From 2009 to 2014, hundreds of asylum applicants made FOIA requests for their assessments, but not one of them was given any portion. During this time period, DHS maintained that it was impossible for it to segregate out anything from the assessments.

14. In 2014, a court declared that the first six paragraphs of an assessment were "easily" segregable, and should be disclosed. *Abtew v. DHS,* 47 F. Supp. 3d 98, 114 (D.D.C. 2014).

16. But, the DHS ignored that ruling and continued to refuse to disclose any portion of any assessment to any FOIA requester, unless the DHS was sued, until December 2017.

17. This case is related to *Gatore v. DHS,* Case No. 15-cv-459. In that case, plaintiffs made many allegations, the DHS made many concessions, and the Court made many findings of fact, helpful to plaintiffs. Plaintiffs repeat and incorporate herein by reference, all such allegations, concessions, and findings.

## JURISDICTION

18. This Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendant pursuant to 5 U.S.C. § 552(a) (4) (B) and 28 U.S.C. § 1331. This Court has jurisdiction to grant declaratory and other necessary relief pursuant to 28 U.S.C. § 2201-02.

## VENUE

19. Venue is appropriate under 5 U.S.C. § 552(a) (4) (B), and 28 U.S.C. § 1391, because defendant is located in the District of Columbia.

## PARTIES

20. Each individually named plaintiff is an asylum applicant who seeks his or her assessment, or at least the reasonably segregable portions of it.

21.  Plaintiff Catholic Charities is an organization in Washington DC which assists asylum applicants.  This plaintiff has made FOIA requests in the past for assessments, has requests now pending, and will continue to make such requests in the future.

22. Defendant United States Department of Homeland Security ("DHS") is an agency within the meaning of 5 U.S.C. § 552(e) and 701(b) (1) and is in possession and/or control of the records requested by Plaintiffs, and all similarly situated individuals, which are the subject of this action.

## FIRST CAUSE OF ACTION

23. Plaintiffs repeat, allege, and incorporate the allegations contained in all paragraphs set forth above.

24. Plaintiff Deborah Mulangu is seeking asylum. She was interviewed by an asylum officer, who wrote an assessment. That document was improved and completed, and then initialed by a SAO. The first several paragraphs of that document contain facts.

25. Those first several paragraphs are reasonably segregable. Those paragraphs are "easily" segregable. Those paragraphs simply recite the facts that plaintiff presented to the asylum officer during the asylum application interview.

26. Plaintiff asked plaintiff Catholic Charities to make a "third party" FOIA request for the assessment. Catholic Charities made that request. In response, Defendant provided no portion of the document. Defendant did not provide the reasonably segregable portions. Plaintiffs made an administrative appeal of that action, which resulted in a denial. *See* Exhibit 1, attached hereto. The word "segregable" is not used in that denial. Plaintiffs have exhausted all administrative remedies.

27. "Any reasonably segregable portion of the record shall be provided to any person requesting such record ….." 5 U.S.C. § 552(b). Defendant has violated this statute.

28. During the years 1998-2007, defendant provided not only the reasonably segregable portions of assessments to FOIA requesters, defendant provided *entire* assessments. Defendant changed this practice in 2008.

29. Defendant had a policy and practice of never providing any part of an assessment to a FOIA requester, from 2008 to December 2017.

30. From 2008 to December 2017, more than 100 asylum applicants made a FOIA request for their assessment. The defendant has not provided nothing in response, except to those who filed lawsuits.

30a. There is no discovery in immigration court.

31. During the years 2008-the present, defendant has been providing, and continues to provide, copies of *entire* assessments to immigration judges and federal appellate courts.

32. During the years 2008-the present, defendant has argued to immigration courts and to federal appellate courts that assessments should be considered by the court, because those documents are reliable and trustworthy, and because those documents are probative evidence showing that the claim of an asylum applicant should be denied.

33. During the years 2008-the present, defendant has been surprising and ambushing asylum applicants with assessments, sprung upon them for the first time in the middle of immigration court proceedings.

34. in other words, for the past ten years DHS has been telling FOIA requesters that the assessment is privileged and that nothing can be segregated out of it; and at the same time, DHS has been telling judges that they should read every word in the assessment, because it proves why the applicant should be deported.

35. During the years 2008 to the present, DHS has never allowed itself to be surprised or ambushed in court, by the presentation of documents it had never seen before. When a noncitizen attempted to spring upon DHS a new document, in the middle of immigration court proceedings, DHS complained loudly and immediately to the court, insisting that it was being treated unfairly.

36. During the years 2008 to the present, DHS has not yet acknowledged any unfairness in this situation, where it can never be ambushed in court, but the asylum applicant can be.

37. Plaintiff has the legal right under FOIA to obtain the reasonably segregable portions of the initialed assessment, and no legal basis exists for defendant's failure to provide such portions.

38. Defendant has violated the FOIA, 5 U.S.C. § 552 in the several ways as indicated above.

## SECOND CAUSE OF ACTION

39. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

40. Plaintiff Dramou is seeking asylum in the United States. He asked plaintiff Catholic Charities to make a "third party" FOIA request for the assessment. Catholic Charities made that request. In response, Defendant provided no portion of the document. He, through Catholic Charities, made an administrative appeal of that action, which resulted in a denial. *See* Exhibit 2, attached hereto. The word "segregable" is not used in that denial. He has exhausted all of his administrative remedies.

41. The facts concerning this plaintiff are in essence the same as the facts for plaintiff Mulangu.

## THIRD CAUSE OF ACTION

42. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

43. Plaintiff Catholic Charities is a religious organization that helps asylum applicants. Catholic Charities has made many FOIA requests in the past, and will continue to do so in the future. Catholic Charities is the social ministry outreach of the Archdiocese of Washington. It seeks to serve the poor and most vulnerable. It can serve as representative of the class.

44. Catholic Charities conducts trainings and seminars for lawyers representing asylum applicants, and assists other organizations, such as the American Immigration Lawyers Association, in their trainings. Lawyers at Catholic Charities speak at conferences and write articles for other lawyers and the public.

45. Catholic Charities wants to monitor and examine the work of asylum offices, to ensure that all asylum applicants obtain justice, to ensure that the offices are doing their job properly, that their training and internal quality control mechanisms are sufficient. Catholic Charities wants to assist Congress and the advocacy community in the implementation and improvement of the asylum system; it wants to increase public awareness and to facilitate public oversight of the asylum system; and it wants to preserve the integrity of immigration court and asylum office proceedings. If it is able to read assessments, it will learn more about what asylum offices are doing and not doing.

46. Catholic Charities is being injured by the above policies, practices, and acts of the defendant. Its ability to effectuate its above-stated goals is being adversely affected. It relies heavily and frequently on FOIA to conduct work that is essential to the performance of certain of their primary institutional activities. The acts of defendant hinder and prejudice this plaintiff in achieving its goals.

47. Catholic Charities is being forced to divert resources away from its projects to litigate this case. It must therefore reduce the number of clients served. Staff time is being diverted. It is suffering informational injury. Its injuries are ongoing. It must use its limited resources to counteract its injuries.

48. Catholic Charities is being frustrated in its efforts to provide legal assistance to as many asylum seekers as it can. It is being hindered in its efforts to further the purpose of the

Immigration and Nationality Act. It is in the zone of interests protected by the INA and the FOIA.

## CLASS ACTION ALLEGATIONS

49. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

50. This action is brought by the named plaintiffs on their own behalf and on behalf of the class of all other similarly situated individuals under the provisions of Fed. R. Civ. P. 23(a) and (b).

51. The class so represented by the above-named Plaintiffs consists of all persons who, from September 9, 2013 to December 31, 2017, made a FOIA request for their assessment, but were not provided with the reasonably segregable portions thereof.

52. The exact number of members of the class, as hereinabove identified and described, is not known, but it is reasonable to believe the class is so numerous that joinder of individual members is impracticable. The class meets the requirements of Fed. R. Civ. P. 23(a)(1). More than 100 individuals are members of this class. Very few of the class members have English as their native language. The class members are dispersed throughout the United States.

52a. During each year, from 2013 through 2017, DHS wrote thousands of assessments. Some of these are assessments to refer; some are assessments to grant.

52b. During each year, from 2013 through 2017, thousands of asylum applicants made FOIA requests for their assessments.

52c. During each year, from 2013 through 2017, "over 95% of the requests received by USCIS are from individuals seeking their entire immigration file."

52d. The immigration file of an asylum applicant includes his assessment.

52e. The immigration file of a naturalization applicant, who previously was granted asylum, includes his assessment.

52f. The DHS knows how many asylum applicants are referred to immigration court, and how many applicants were granted asylum, each year, from 2013 to the present. The DHS knows each of these persons, by name and A number.

52g. The headquarters of DHS knows more about DHS than does USCIS.

52h. The headquarters of DHS knows more about ICE than does USCIS.

52i. The USCIS does not know all the information held by ICE.

52j. The USCIS does not know all the information held by DHS.

53. The relief sought is common to the entire class, and there are common questions of law and fact that relate to and affect the rights of each member of the class.  These common questions include and involve whether the assessments contain reasonably segregable portions which must be provided to the plaintiffs, and whether the agency's policy and/or pattern and practice of not releasing said portions was unlawful.  The class meets the requirements of Fed. R. Civ. P. 23(a)(2).

54. The claims of the named plaintiffs are typical of the claims of the proposed class: the plaintiffs have not been provided with the reasonably segregable portions of their assessments. The class meets the requirements of Fed. R. Civ. P. 23(a)(3).

55. The plaintiffs will fairly and adequately protect the interests of the class. All requirements of Fed. R. Civ. P. 23 (a)(4) have been met. The named plaintiffs seek the same relief as is sought by the class members. The named plaintiffs have no interests adverse to other class members. Counsel for plaintiffs has the skills and experience necessary to litigate this case.

56. Defendant acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.  Defendant had a policy and practice of not providing reasonably segregable portions of assessments to FOIA requesters. All requirements of Fed. R. Civ. P. 23(b)(2) have been met.

57. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  All requirements of Fed. R. Civ. P. 23(b)(3) have been met.

58. "There is no doubt that asylum is a valuable form of relief from removal…" *O.A. v. Trump,* 2019 U.S. Dist. LEXIS 129426, *82 (D.D.C. August 2, 2019) (class certified of asylum seekers entering the United States, but not at a port of entry).

59. Courts should have solicitude for "those entering our country- individuals who have often fled violence and persecution to seek safety on our shores…" *Damus v. Neilsen,* 313 F. Supp. 3d 317, 343 (D.D.C. 2018) (class certified of asylum applicants who had been denied release from detention).

60. "It is important to recognize the limitations of the persons seeking asylum…many class members have suffered severe trauma, do not speak English, are unfamiliar with the United States' complicated immigration legal system, and do not have access to counsel." *Mendez-Rojas v. Johnson,* 305 F. Supp. 3d 1176, 1185 (W.D. WA. 2018)(class certified of asylum seekers challenging failure of government to provide them with notice of the one-year deadline for applying for asylum).

## **PRAYER FOR RELIEF**

61. WHEREFORE, plaintiffs pray that this Court certify this matter as a class action, appoint the named plaintiffs as class representatives, and appoint undersigned counsel as class counsel.

62. Plaintiffs, and each of them, pray that judgment be entered in his or her favor against defendant and that the court:

a) Order defendant to disclose the reasonably segregable portions of the initialed assessment to each plaintiff and to each class member forthwith;
b) Declare that defendant's failure to provide such portions violates the FOIA;
c) Declare that the policy and practice of defendant of refusing to disclose such portions violates the FOIA;
d) Award plaintiffs reasonable attorney fees and costs pursuant to 5 U.S. C. §552(a) (4) (E); and
e) Grant all other such relief to plaintiffs as the Court deems proper and equitable.

    Respectfully submitted,

    Attorney for Plaintiffs


    David L. Cleveland
    DC Bar # 424209
    Catholic Charities
    924 G Street, NW
    Washington, DC 20001
    [202] 772-4345 Fax: [202] 386-7032
    1949.david@gmail.com